# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 19AP1850-CR |

| | |
|---|---|
| COMPLETE TITLE: | State of Wisconsin,<br>        Plaintiff-Respondent-Petitioner,<br>    v.<br>Scott William Forrett,<br>        Defendant-Appellant. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 398 Wis. 2d 371,961 N.W.2d 132
PDC No: 2021 WI App 31 - Published

| | |
|---|---|
| OPINION FILED: | June 3, 2022 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 17, 2022 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Waukesha |
| JUDGE: | Michael J. Aprahamian |

JUSTICES:
DALLET, J., delivered the majority opinion of the court, in which ANN WALSH BRADLEY, REBECCA GRASSL BRADLEY, and KAROFSKY, JJ., joined. HAGEDORN, J., filed a dissenting opinion, in which ZIEGLER, C.J., and ROGGENSACK, J., joined.
NOT PARTICIPATING:

ATTORNEYS:

For the defendant-appellant there was a brief and oral argument by *David Malkus,* assistant state public defender.

For the plaintiff-respondent-petitioner there were briefs filed by *Michael C. Sanders*, assistant attorney general, with whom on the briefs was *Joshua L. Kaul*, attorney general. There was an oral argument by *Michael C. Sanders*, assistant attorney general.

An amicus brief was filed by *Douglas Hoffer*, deputy city attorney, with whom on the brief was *Stephen C. Nick*, city attorney, for the City of Eau Claire.

**2022 WI 37**

No. 2019AP1850-CR
(L.C. No. 2017CF603)

STATE OF WISCONSIN        :        IN SUPREME COURT

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

**State of Wisconsin,**

      **Plaintiff-Respondent-Petitioner,**

      **v.**

**Scott William Forrett,**

      **Defendant-Appellant.**

**FILED**

**JUN 3, 2022**

Sheila T. Reiff
Clerk of Supreme Court

DALLET, J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, REBECCA GRASSL BRADLEY, and KAROFSKY, JJ., joined. HAGEDORN, J., filed a dissenting opinion, in which ZIEGLER, C.J., and ROGGENSACK, J., joined.

REVIEW of a decision of the court of appeals. *Affirmed as modified and remanded.*

¶1 REBECCA FRANK DALLET, J. Scott Forrett was convicted of his seventh offense for operating while intoxicated (OWI). Counted as one of the six prior offenses was a 1996 temporary revocation of his driving privileges for refusing to submit to a warrantless blood draw. That led to him receiving a longer sentence than he could have received had the revocation not been counted as an offense. Forrett asserts that this aspect of

Wisconsin's graduated-penalty scheme for OWI offenses is unconstitutional because it threatens with criminal penalties those who exercise their Fourth Amendment right to be free from unreasonable searches. We agree. We conclude that under the U.S. Supreme Court's decision in North Dakota v. Birchfield, 579 U.S. 438 (2016), and our decision in State v. Dalton, 2018 WI 85, 383 Wis. 2d 147, 914 N.W.2d 120, Wisconsin's OWI graduated-penalty scheme is unconstitutional to the extent it counts prior revocations for refusing to submit to a warrantless blood draw as offenses for the purpose of increasing the criminal penalty.

I

¶2 In 2017, when Scott Forrett was arrested and charged with OWI, he had five previous OWI convictions. He also had his driving privileges temporarily revoked in 1996 because he had refused to consent to a warrantless blood draw after the police stopped him on suspicion of OWI. See Wis. Stat. § 343.305(2) (2019-20) (authorizing the police to request that a driver submit to a chemical test of her breath, blood, or urine).[1] That encounter did not result in an OWI conviction. Nevertheless, under Wisconsin's graduated-penalty scheme for repeat-OWI offenders, Forrett's 1996 revocation counts as a prior "offense" for the purposes of determining the appropriate charge and punishment for subsequent OWIs. See Wis. Stat.

---

[1] All subsequent statutory references are also to the 2019-20 version.

2

§§ 346.65(2)(am), 343.307(1). Thus, in 2017, Forrett was charged with his seventh OWI offense, a Class F felony. See Wis. Stat. § 346.65(2)(am)6. He was also charged with possession of a controlled substance, possession of drug paraphernalia, failure to install an ignition-interlock device, operating a vehicle with a prohibited blood-alcohol content, and driving with a revoked license. The State agreed to dismiss those charges in exchange for Forrett pleading guilty to the seventh-offense OWI. Forrett accepted that deal and pleaded guilty, and the circuit court imposed an 11-year sentence, bifurcated as six years of initial confinement and five years of extended supervision.[2] See Wis. Stat. § 973.01.

¶3 Forrett sought post-conviction relief, arguing that under Birchfield and Dalton, it was unconstitutional to count as a criminal offense his 1996 revocation for refusing to submit to a warrantless blood draw.[3] He pointed out that but for his 1996 revocation, he would have been charged with a Class G felony, which carries with it a mandatory minimum of 18 months initial

---

[2] The Honorable Michael J. Aprahamian of the Waukesha County Circuit Court presided over Forrett's conviction and sentencing. The Honorable Brad D. Schimel presided over the post-conviction proceedings.

[3] A person's license can be revoked for many other reasons, such as committing a homicide or exceeding the speed limit by more than 25 miles per hour. See, e.g., Wis. Stat. §§ 343.30–.32. The only basis for revocation at issue here is refusing to submit to a warrantless blood draw. Thus, throughout this opinion, we use "revocation" as a shorthand for a "revocation for refusing to submit to a warrantless blood draw." Our conclusions pertain only to such revocations and we do not address revocations for any other purpose.

confinement and a maximum confinement period of five years. See Wis. Stat. §§ 346.65(2)(am)5, 973.01(2)(b)7. He was charged, however, with a Class F felony, which is punishable by a mandatory minimum of three years of initial confinement and a maximum confinement period of seven years and six months. See Wis. Stat. §§ 346.65(2)(am)6., 973.01(2)(b)6m. Forrett argued that this penalty structure is unconstitutional because it threatens to criminally punish people who exercise their Fourth Amendment right to refuse a warrantless blood draw. The circuit court denied Forrett's post-conviction motion, reasoning that the OWI-penalty statutes do not "punish him for directly exercising some constitutional right[;] rather, [the 1996 revocation] simply . . . affects the penalty structure relative to his conduct."

¶4 The court of appeals reversed on the grounds that counting prior revocations as "offenses" under Wis. Stat. §§ 343.307(1)(f) and 343.305(10) "impermissibly . . . penalizes a defendant's Fourth Amendment right to be free from an unreasonable warrantless search." State v. Forrett, 2021 WI App 31, ¶19, 398 Wis. 2d 371, 961 N.W.2d 132. In doing so, the court of appeals distinguished between using one's refusal to submit to a warrantless blood draw as evidence of criminal liability for OWI in the same case, which is constitutionally permissible, and using a prior refusal to increase a defendant's criminal penalty for a subsequent OWI, which it held is improper under Birchfield and Dalton. Id., ¶¶18-19. Accordingly, the court of appeals commuted Forrett's conviction to a sixth-

4

offense OWI and remanded the cause to the circuit court for resentencing.  Id., ¶19.  The State appealed.

## II

¶5  Whether a statute is unconstitutional is a question of law that we review de novo.  E.g., State v. Wood, 2010 WI 17, ¶15, 323 Wis. 2d 321, 780 N.W.2d 63.  A statute is facially unconstitutional when it "cannot be enforced under any circumstances."  E.g., Serv. Emps. Int'l Union, Local 1 v. Vos, 2020 WI 67, ¶92, 393 Wis. 2d 38, 946 N.W.2d 35 (quoting another source).  Forrett's constitutional challenge requires us to interpret several statutes, which is also a question of law subject to de novo review.  E.g., State v. Matthews, 2021 WI 42, ¶7, 397 Wis. 2d 1, 959 N.W.2d 640.

## III

¶6  A few constitutional principles lie at the foundation of our analysis.  The first is a person's right under the Fourth Amendment to refuse "unreasonable searches."  U.S. Const. amend. IV; see also Birchfield, 579 U.S. at 455 (a chemical test of a person's breath or blood is a "search").  Second is that warrantless searches are "per se unreasonable," unless some exception to the Fourth Amendment's warrant requirement applies. E.g., State v. Matejka, 2001 WI 5, ¶17, 241 Wis. 2d 52, 621 N.W.2d 891.  And third is that it has "long been established that a [s]tate may not impose a penalty upon those who exercise a right guaranteed by the Constitution," such as the right to

5

refuse a warrantless, unreasonable search. See Harman v. Forssenius, 380 U.S. 528, 540 (1965); Buckner v. State, 56 Wis. 2d 539, 550, 202 Wis. 2d 406 (1972). With those principles in mind, we turn to Forrett's challenge to the constitutionality of the OWI statutes.

A

¶7 Wisconsin penalizes OWI offenders under a graduated-penalty system. A person's first OWI offense is generally a civil infraction. See Wis. Stat. § 346.65(2)(am)1. Subsequent offenses are criminal and, depending on how many prior offenses a person has, may constitute a felony punishable by up to 10 years of initial confinement and 5 years of extended supervision. See Wis. Stat. §§ 346.65(2)(am)7. (a person guilty of 10 or more OWI offenses is guilty of a Class E felony), 939.50(3)(e). Per statute, a person's total number of OWI offenses is determined by counting not only OWI convictions but also "suspensions or revocations" of a person's driving privileges resulting from a "refusal to submit to chemical testing," provided the refusal and the conviction do not "aris[e] out of the same incident or occurrence." See Wis. Stat. §§ 343.307(1)(e), (f); 346.65(2)(am)2.-7. Thus, a prior revocation that is not tied to an OWI conviction nevertheless threatens to increase the criminal penalties that may be imposed for a subsequent OWI conviction. See generally Wis. Stat. § 346.65(2)(am). For example, take an individual who has no prior OWI convictions but who, in a prior, separate incident

6

that did not result in a conviction, is revoked for refusing to submit to a chemical test. If, in the current incident, she is convicted of OWI, her prior revocation increases her penalty from a civil offense to a criminal one——for no reason other than that she previously refused to submit to a warrantless chemical test. See Wis. Stat. § 346.65(2)(am)2.

¶8 The OWI statutes treat refusing any type of chemical test the same, but the U.S. Supreme Court has drawn a key constitutional distinction between a warrantless test of a person's breath and a warrantless test of her blood.[4] Whereas a breath test implicates no "significant privacy concerns"—— because exhaled air "is not part of [one's] body" and the test's "physical intrusion is almost negligible"——warrantless blood draws are "another matter." Birchfield, 579 U.S. at 461-63, 474-76. Blood draws are "significantly more intrusive" than a breath test in that they "'require piercing the skin' and extract a part of the subject's body." Id. at 463-64 (quoting Skinner v. Ry. Lab. Execs.' Ass'n, 489 U.S. 602, 625 (1989)). Those differences are why, after an OWI arrest, a warrantless breath test is permissible as a reasonable search incident to an arrest but a warrantless blood draw is not. Id. at 474-76; see also Missouri v. McNeely, 569 U.S. 141, 152-53 (2013). Accordingly, for blood draws, the police must get a warrant, and

---

[4] Wisconsin Stat. § 343.305(2) also applies to chemical tests of a person's urine. Neither the U.S. Supreme Court nor this court has addressed the Fourth Amendment implications of a urine test, and we do not need to do so here since Forrett's revocation was based on his refusing a blood test.

7

when they do not have one, "a person has a constitutional right to refuse" the request. See State v. Prado, 2021 WI 64, ¶47, 397 Wis. 2d 719, 960 N.W.2d 869; see also Birchfield, 579 U.S. at 474-75. It therefore follows that a state cannot threaten or "impose criminal penalties on th[at] refusal," Birchfield, 579 U.S. at 477, because "a [s]tate may not impose a penalty upon those who exercise a right guaranteed by the Constitution," Harman v. Forssenius, 380 U.S. 528, 540 (1965). See also Dalton, 383 Wis. 2d 147, ¶66; Buckner v. State, 56 Wis. 2d 539, 550, 202 Wis. 2d 406 (1972).[5]

¶9 Such unconstitutional criminal penalties can take several forms. It could be that a person is criminally charged specifically for refusing a warrantless blood draw. See Birchfield, 579 U.S. at 478. Or, as was the case in Dalton, a person could be subjected to a longer sentence "for the sole reason that he refused to submit to a [warrantless] blood test." 383 Wis. 2d 147, ¶¶59-61, 67 (explaining that a "lengthier jail sentence is certainly a criminal penalty"); see also Birchfield, 579 U.S. at 476-78. These two examples are illustrative but not exhaustive: No matter the form the criminal penalty takes, the state cannot impose such a penalty on a person because she exercised her Fourth Amendment right. See Harman, 380 U.S. at 540; Buckner, 56 Wis. 2d at 550.

---

[5] There is no constitutional issue, however, when a state imposes only "civil penalties," such as revoking a person's operating privileges, for refusing a warrantless blood draw. See Birchfield, 579 U.S. at 476-77 (adding that imposing "evidentiary consequences" is also permissible).

8

B

¶10 In both Birchfield and Dalton, the refusal and the related criminal penalties arose in the same case. Here, however, Forrett's refusal and the criminal penalties for that refusal arise in different cases. The question then, is whether it is unconstitutional under Birchfield and Dalton to increase the criminal penalty for a separate, subsequent OWI because, in a prior instance, the driver refused a warrantless blood draw.

¶11 We conclude that it is. Neither Birchfield nor Dalton limited its holding to refusals related to the instant OWI charge. Both cases rested on the idea that the state cannot criminalize the exercise of a constitutional right, and we see no reason why that rationale does not apply equally when the criminal penalty is imposed in a later case. See Birchfield, 579 U.S. at 476-78; Dalton, 383 Wis. 2d 147, ¶¶61-66; see also, e.g., County of Kenosha v. C & S Mgmnt., Inc., 223 Wis. 2d 373, 400-01, 588 N.W.2d 236 (1999) (explaining that a person may not be prosecuted in retaliation for exercising her constitutional rights). After all, delayed criminal penalties are still criminal penalties. Thus, reading Birchfield and Dalton together with Harman, Buckner, and the Fourth Amendment, it is unconstitutional in all circumstances to threaten criminal penalties for refusing to submit to a warrantless blood draw. Yet that is what the OWI statutes do by counting revocations as offenses under Wis. Stat. § 343.307(1). See generally Wis. Stat. § 346.65(2)(am).

9

¶12 To be sure, there are limited instances in which counting a prior revocation as an offense will have no immediate effect. For example, a person who has four prior OWI convictions and one revocation and is then convicted of another OWI is subject to the same criminal penalties as a person with the same number of prior convictions but no revocations. See Wis. Stat. § 346.65(2)(am)5. (imposing the same minimum punishment for a fifth and sixth offense). Although the criminal penalty is not increased in such a case, the statutes still count revocations as offenses for penalty purposes. Therefore there is still at least a threat of an increased criminal penalty in a subsequent case. And that threat——just like its realization——is unconstitutional. See Birchfield, 579 U.S. at 477–78.

¶13 There is no constitutional issue, however, when the revocation and the ensuing conviction "arise out of the same incident or occurrence." In that case, the revocation and conviction "shall be counted as one" offense, so there is no criminal penalty for the revocation. See Wis. Stat. § 346.65(2)(am)2.–7; cf. Dalton, 383 Wis. 2d 147, ¶¶60–67. In Forrett's case, however, his 1996 refusal resulted only in a revocation, not an OWI conviction. There is therefore no underlying criminal conduct from 1996 for which Forrett is being criminally punished. Instead, he is being criminally punished only for exercising his Fourth Amendment right to be free from unreasonable searches. That is unconstitutional. See Buckner, 56 Wis. 2d at 550; Birchfield, 579 U.S. at 477–78.

10

¶14 We therefore hold that the OWI statutes are facially unconstitutional to the extent they count a prior, stand-alone revocation resulting from a refusal to submit to a warrantless blood draw as an offense for the purpose of increasing the criminal penalty.

C

¶15 The State argues that there is no difference between the OWI statutes' graduated-penalty scheme and any other statute that imposes heightened penalties on repeat offenders, pointing out that both this court and the U.S. Supreme Court have upheld such statutes as constitutional. See, e.g., Ingalls v. State, 48 Wis. 647, 658, 4 N.W. 785 (1880) ("The increased severity of the punishment for the subsequent offence is not a punishment of the person for the first offence a second time, but a severer punishment for the second offence."); United States v. Rodriguez, 553 U.S. 377, 386 (2008) (finding no double-jeopardy issue when a defendant receives a higher sentence under a recidivism statute because "100% of the punishment is for the offense of conviction"). Applying the rationale of Ingalls and Rodriguez to the OWI context, the State asserts that the graduated-penalty scheme is constitutional because it imposes no direct criminal punishment on the exercise of a constitutional right; it only considers that conduct for the purpose of increasing the punishment for a subsequent crime. Thus, in the State's view, Forrett was not criminally punished for refusing a

11

warrantless blood draw in 1996; he was punished only for violating the OWI statutes a seventh time.

¶16 We reject that argument for the same reasons we rejected the State's similar argument in Dalton. See 383 Wis. 2d 147, ¶65. The repeat-offender analogy fails because, in cases like Ingalls and Rodriguez, the initial conduct was not constitutionally protected. It is therefore permissible to punish a third-time bank robber more harshly than a first-time offender because there is no constitutional right to rob a bank. Likewise, it is constitutional to punish a person more harshly for her third OWI conviction than for her first because no one has a constitutional right to drive while intoxicated. But a person has a constitutional right to refuse a warrantless blood draw, so that refusal cannot be treated as an offense for the purposes of increasing the criminal penalty for a subsequent offense. See Dalton, 383 Wis. 2d 147, ¶66; Buckner, 56 Wis. 2d at 550.[6]

¶17 The State also rehashes another argument we rejected in Dalton: that it is permissible for the State to use a prior refusal to submit to a warrantless blood draw as the reason for an increased criminal penalty so long as the penalty is not assessed directly on the refusal. See 383 Wis. 2d 147, ¶63. This supposed distinction makes no difference——both achieve the

---

[6] The State also relies on Nichols v. United States, 511 U.S. 738 (1994), but that reliance is misplaced because Nichols involved no argument that the defendant was being punished for exercising a constitutional right, which is the basis for Forrett's claim under Birchfield and Dalton.

same unconstitutional result. See id. ("[T]he fact that refusal is not a stand-alone crime does not alter our analysis."); Birchfield, 579 U.S. at 476-78; see also Commonwealth v. Monarch, 200 A.3d 51, 57 (Pa. 2019) ("Birchfield contemplated that the decision would apply not only to separate criminal offenses but also to enhanced sentencing . . . that might arise from refusal."). Whether the criminal punishment is immediate or delayed, the OWI statutes impermissibly allow the State to punish more severely an OWI offender who refused a warrantless blood draw "solely because he availed himself of one of his constitutional rights." See Buckner, 56 Wis. 2d at 550; see also Commonwealth v. McCarthy, 628 S.W.3d 18, 33 (Ky. 2021) (holding that a Kentucky statute was incompatible with Birchfield because it "was absolutely clear that the sentence [for subsequent DUI convictions] will be higher . . . due to the refusal").

D

¶18 Consistent with our analysis above, we agree with the court of appeals that Forrett cannot be charged with a seventh-offense OWI because one of his six prior "offenses" is a revocation for refusing to submit to a warrantless blood draw. But for his 1996 refusal, Forrett's current OWI conviction would be his sixth, for which he could be sentenced to no more than five years of initial confinement. See Wis. Stat. §§ 346.65(2)(am)5., 973.01(2)(b)7. Instead, he was convicted of his seventh OWI offense and was sentenced to six years of

13

initial confinement. See Wis. Stat. §§ 346.65(2)(am)6., 973.01(2)(b)6m. Imposing such heightened criminal penalties based upon a person's prior refusal to submit to a warrantless blood draw is unconstitutional under Birchfield and Dalton. See Birchfield, 579 U.S. at 476-78; Dalton, 383 Wis. 2d 147, ¶¶60-67.

¶19 As for the remedy, however, we reach a different conclusion than the court of appeals. The court of appeals commuted Forrett's conviction to OWI as a sixth offense and remanded the cause for resentencing. Under the terms of the plea agreement, however, Forrett agreed to plead to a seventh-offense OWI (a Class F felony) in exchange for the State dismissing his other charges and recommending substantial prison time consistent with that conviction. But, for the reasons discussed above, Forrett could have been convicted only of a Class G felony, which entails substantially lesser criminal penalties than a Class F felony. That alters the basis for the bargain struck by Forrett and the State in such a way that the plea agreement cannot be enforced. See State v. Tourville, 2016 WI 17, ¶25, 367 Wis. 2d 285, 876 N.W.2d 735 (explaining that plea agreements are "rooted in contract law," which "demands that each party should receive the benefit of its bargain") (quoting another source). On remand, then, both the State and Forrett should be given the opportunity to consider their next steps. See id. ("While the government must be held to the promises it made, it will not be bound to those it did not make.") (quoting another source); see also State v. Briggs, 218

14

Wis. 2d 61, 69-74, 579 N.W.2d 783 (Ct. App. 1998) (reasoning that vacating one of several convictions obtained by plea agreement required vacating the entire plea agreement).

IV

¶20  In conclusion, we affirm the court of appeals with the modification above regarding the remedy.  We hold that Wis. Stat. §§ 343.307(1) and 346.65(2)(am) are unconstitutional to the extent that they count prior revocations resulting solely from a person's refusal to submit to a warrantless blood draw as offenses for the purpose of increasing the criminal penalty.  We remand the cause to the circuit court with instructions to vacate the judgment of conviction and conduct further proceedings consistent with this decision.

*By the Court.*—The court of appeals' decision is affirmed as modified, and the cause remanded.

¶21 BRIAN HAGEDORN, J. (*dissenting*). The majority declares Wisconsin's escalating OWI penalty scheme unconstitutional when counting revocations based on the refusal to submit to a warrantless blood test. This conclusion, however, is premised entirely on the notion that the later OWI penalty enhancer constitutes criminal punishment for the earlier, unrelated refusal. Because that is not the law, I respectfully dissent.

¶22 In Birchfield v. North Dakota, the Supreme Court considered several questions related to implied consent laws. 579 U.S. 438, 450-54 (2016). The issues focused on the lawfulness of various searches under the Fourth Amendment, and whether a defendant could be criminally or civilly sanctioned for refusing to consent to a search. Id. at 444. Pertinent here, the Court analyzed whether North Dakota's implied consent law could serve as a basis for justifying a warrantless blood test (a search) when criminal penalties attached to the refusal. Id. at 451. The Court held it could not. Id. at 476-77. It ruled that Birchfield, who was criminally prosecuted under North Dakota's implied consent law, "was threatened with an unlawful search and that the judgment affirming his conviction must be reversed." Id. at 477-78. In reaching this conclusion, the Court distinguished implied consent laws that impose civil penalties for refusal (which are lawful) from those that impose criminal penalties (which are not). Id. at 476-77.

¶23 Unlike North Dakota, Wisconsin imposes no criminal penalties for refusing to submit to a warrantless blood test.

1

Our law establishes only civil consequences. See Wis. Stat. § 343.305(10). In 1996, Scott Forrett's operating privileges were temporarily revoked——a civil penalty——for refusing to submit to a warrantless blood test. According to Birchfield, revoking Forrett's operating privileges was perfectly legal because no criminal punishment was imposed for his refusal. See 579 U.S. at 476-77. That should end the matter. But the majority holds otherwise, concluding Forrett's sentence for his most recent OWI punishes him anew for conduct that occurred 26 years ago. This has never been the law.

¶24 It is well-established that a later criminal prosecution that takes into account prior conduct——criminal or not——does not amount to new criminal punishment for the prior conduct. We set forth this proposition in 1880 when we concluded that punishing persons longer for repeat offenses did not violate constitutional double jeopardy protections. Ingalls v. State, 48 Wis. 647, 658, 4 N.W. 785 (1880). We explained that considering prior conduct in meting out punishment for a new crime "is not a punishment of the person for the first offense a second time, but a severer punishment for the second offense." Id. The United States Supreme Court is in accord: "When a defendant is given a higher sentence under a recidivism statute——or for that matter, when a sentencing judge, under a guidelines regime or a discretionary sentencing system, increases a sentence based on the defendant's criminal history—— 100% of the punishment is for the offense of conviction." United States v. Rodriquez, 553 U.S. 377, 386 (2008); see also

2

Monge v. California, 524 U.S. 721, 728 (1998) ("An enhanced sentence imposed on a persistent offender thus 'is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes' but as 'a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.'" (quoting another source)).

¶25 These principles apply no less to Wisconsin's escalating penalty scheme for OWIs. See State v. McAllister, 107 Wis. 2d 532, 535, 319 N.W.2d 865 (1982) (explaining that the OWI "graduated penalty structure is nothing more than a penalty enhancer similar to a repeater statute"). Wisconsin counts prior OWI offenses, along with revocations and suspensions in determining the penalty for a new OWI offense. Wis. Stat. § 346.65(2)(am). A first-offense OWI is a civil, not criminal, violation yet it counts in the OWI escalating penalty scheme. Id. Suspensions and revocations for refusing to submit to chemical testing also count. See Wis. Stat. § 343.307.

¶26 OWI punishments are therefore increased based on prior conduct of all kinds, civil and criminal alike. And under an unbroken and unchallenged line of precedent, the punishment for the current OWI penalizes only the crime of conviction——not any of the past conduct that may serve as an enhancer. See State v. Schuman, 186 Wis. 2d 213, 218, 520 N.W.2d 107 (Ct. App. 1994) (holding an OWI penalty enhancer "is not an additional, retroactive, penalty" for the prior conduct, "but a stiffer penalty for the latest crime"). As the United States Supreme Court has said, "Enhancement statutes, whether in the nature of

3

criminal history provisions such as those contained in the Sentencing Guidelines, or recidivist statutes that are commonplace in state criminal laws, do not change the penalty for the earlier conviction." Nichols v. United States, 511 U.S. 738, 747 (1994).

¶27 Applying this concept here is straightforward. Forrett's present OWI prosecution punishes him only for his new offense. Counting prior offenses in calculating his sentence does not criminally punish Forrett for any of his prior conduct. This is true when counting prior OWI convictions of a civil or criminal nature. And it is true of revocations for refusing to submit to a blood test. Thus, under binding law, the State is not criminally punishing Forrett for refusing a blood test back in 1996; rather, it is simply punishing him more harshly for his newest OWI conviction. Nothing in Birchfield casts any doubt on these principles. Nothing in Birchfield calls into question the constitutionality of Wisconsin's OWI escalating penalty scheme.

¶28 The court of appeals and the majority rely heavily on State v. Dalton to reach a contrary result. 2018 WI 85, 383 Wis. 2d 147, 914 N.W.2d 120. In Dalton, the circuit court imposed a longer sentence because Dalton refused a blood test in the same incident that lead to his OWI conviction. Id., ¶¶19-21. This court concluded that Dalton suffered criminal punishment in violation of Birchfield as a result of his refusal. Id., ¶¶61, 67. Dalton's facts were much closer to Birchfield, but Dalton's reasoning should not be extended. The majority seems to interpret Dalton as prohibiting any criminal

4

penalty enhancements that are connected to a prior refusal to consent to a warrantless blood test. If this is what Dalton stands for, it was wrong. By expanding Dalton beyond the circumstances of the immediate OWI conviction, the majority adopts a legal rule that is unrecognizable from its supposed roots in Birchfield and irreconcilable with more than a century of precedent on penalty enhancement statutes.

¶29 The majority's conclusion in this case takes us far afield from the law we are supposed to apply. Consistent with Birchfield, Wisconsin imposes only civil penalties for refusing to submit to a warrantless blood test. Yet today, the court decides that Wisconsin's OWI graduated-penalty scheme is unconstitutional when it counts prior revocations for refusing to submit to a blood test. This holding has nothing to do with Birchfield. It is a classic example of pulling a line from an opinion and wrongly applying it to an entirely different sort of case and claim. The majority misapplies Supreme Court precedent and in so doing, overrides the legislature's decision to count prior revocations toward increased OWI penalties. I respectfully dissent.

¶30 I am authorized to state that Chief Justice ANNETTE KINGSLAND ZIEGLER and Justice PATIENCE DRAKE ROGGENSACK join this dissent.

5